**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEC 2 3 2003**

*Robert M. March*

CLERK

FERNANDO REYNA-ZAVALA

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

CIV 03-101 BB/LAM
CR 02-438 BB

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

This matter is before the court on Petitioner Fernando Reyna-Zavala's Motion to Vacate, Set

Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 *(Doc. #1)* filed January 22, 2003, and the

United States' response *(Doc. #7)*.  Petitioner attacks the sentence entered by the United States

District Court for the District of New Mexico in *United States v. Reyna-Zavala*, CR 02-438 BB.

Petitioner raises an ineffective assistance of counsel claim based on trial counsel's failure to preserve

Petitioner's right to seek a downward departure from the applicable offense level and trial counsel's

failure to challenge Petitioner's criminal history category as determined by the probation office.  The

United States contends that Petitioner knowingly and voluntarily entered into a plea agreement that

---

[1]The parties are notified that within **ten (10) days** after being served with a copy of these
Proposed Findings and Recommended Disposition they may file and serve **written objections** with
the Clerk of the U.S. District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any
objections with the Clerk of the U.S. District Court within the ten-day period allowed if that
party wants to have appellate review of the proposed findings and recommended disposition.
If no objections are filed, no appellate review will be allowed.**

prevents Petitioner from challenging: (1) his prior removal from the United States: (2) his criminal

history category; and (3) his sentence.

Having considered the arguments, pleadings, and relevant law, and for the reasons set forth

below, I find that the motion is not well-taken and recommend that it be **DENIED**. Because it is

possible to resolve the issues on the pleadings, and the record establishes conclusively that Petitioner

is not entitled to relief, I find that an evidentiary hearing is not necessary. *See, § 2255;* Rule 8(a).

*Rules Governing Habeas Corpus Under Section 2255; Trice v. Ward,* 196 F.3d 1151, 1159 (10th

Cir. 1999), *cert. denied,* 531 U.S. 835 (2000).

## I. Factual and Procedural Background

Petitioner was arrested on January 22, 2002 near Cristo Rey, New Mexico by the United

States Border Patrol.  Petitioner admitted he had previously been deported on October 3, 2001

following a conviction for Willful Discharge of a Firearm in a Negligent Manner, a felony. *(Doc. #9,*

*in CR 02-438 ).*  On March 26, 2002, Petitioner waived indictment and pled guilty to an Information,

pursuant to a plea agreement, charging Petitioner with Reentry of Deported Alien Previously

Convicted of an Aggravated Felony, in violation of 8 U.S.C. § 1326(a)(1) and (2) and § 1326(b)(2).

*(Docs. #9 and 11 in CR 02-438).*  In the plea agreement that Petitioner signed, he stated that he had

reviewed all aspects of the case with his attorney and was satisfied with his attorney's representation;

he agreed to plead guilty to violation of 8 U.S.C. § 1326(a)(1) and (2) and § 1326(b)(2); and he

stated he understood the maximum penalty the Court could impose included up to 20 years

imprisonment, a fine not to exceed $250,000, a mandatory term of not more than 3 years supervised

release, and a special penalty assessment of $100. *(Doc. #12 in CR 02-438).*

2

The United States and Petitioner also agreed and stipulated in the plea agreement, pursuant to Fed. R. Crim. P. 11(e)(1)(C) (which provides that the parties may agree that a specific provision of the Sentencing Guidelines applies),[2] that Petitioner's offense level under the sentencing guidelines should be 19. His criminal history category was left to be determined by the United States Probation Office and reflected in the presentence report. *(Doc. #12, page 3 in CR 02-438)*. In the plea agreement, Petitioner further stated that he was aware of his right to appeal and that he knowingly waived the right to appeal any sentence imposed, except to the extent that the Court departed upwards from the sentencing guideline range. *(Id., pages 4-5)*. Petitioner also specifically agreed he was not a United States citizen, had no legal immigration status in the United States, and knowingly agreed to "not collaterally attack or contest in any manner reinstatement of [Petitioner's] prior deportation/removal order." Also, Petitioner agreed to "waive all challenges, constitutional or otherwise, to reinstatement of [Petitioner's] prior deportation/removal order." And Petitioner "waive[d] any right [Petitioner] may have to a hearing before an immigration judge, or any other authority under the Immigration and Nationality Act." *(Id., page 3)*. Furthermore, Petitioner recognized, in the plea agreement, that the plea agreement already

> "has conferred a benefit upon him and that no downward departure is appropriate. Consequently, in return for the benefit conferred on the defendant by entering into this agreement, the defendant agrees that he will not seek a downward departure or "adjustment," from the applicable offense level or criminal history category as determined by the Court. This specifically precludes any claim by the defendant, pursuant to U.S.S.G. § 4A1.3, that the criminal history category overstates the seriousness of defendant's criminal history."

*(Doc. #12; page 4, CR 02-438)*.

---

[2]Fed. R. Crim. P. 11(e)(1)(C) was renumbered in the 2002 amendments and is now found at Fed. R. Crim. P. 11(c)(1)(C)

3

Finally, Petitioner also stated in the plea agreement that the "defendant agrees and represents that this plea is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement." *(Id., page 5).*

Plaintiff consented to have his plea taken by a Magistrate Judge *(Doc. #10 in CR 02-438)*, and a plea hearing was held before U.S. Magistrate Judge Joe H. Galvan on March 26, 2002. *(Doc. #13 in CR 02-438).* Petitioner appeared with his attorney, Richard Cauble[3], and participated in the hearing with the aid of a Spanish/English interpreter. At the hearing, the Assistant United States Attorney informed the Court and Petitioner of the maximum penalty he was facing, including "a term of imprisonment of [up to] 20 years, a fine of $250,000, a three-year term of supervised release, and a $100 special penalty assessment." *(Transcript of March 26, 2002, page 6, hereinafter referred to as "Tr. at 6").* Petitioner further testified at the plea hearing that the plea agreement was explained to him, that he understood all of its terms, that he signed the plea agreement voluntarily, and that he desired to plead guilty to the charges in the Information. *(Tr. at 6-7).* The Court informed Petitioner that, under the plea agreement, Petitioner and the government agreed that the appropriate sentencing guideline offense level would be 19, and that the criminal history factor would be determined following an investigation. Petitioner stated that he understood these matters. *(Tr. at 7-8).*

Petitioner also told the Court that, aside from what was included in the written plea agreement, no one made any promises to him to cause him to plead guilty, that no one threatened or forced him to plead guilty, and that the plea was made freely and voluntarily. *(Tr. at 9).* Petitioner said he had discussed the case with his attorney and that he was satisfied with his attorney's

---

[3]Richard Cauble was Petitioner's original appointed counsel but withdrew on September 13, 2002 and was replaced by Steve Ryan.

representation. *(Tr. at 9)*.   When questioned about his health, Petitioner stated he had an ulcer and

was "taking pills for the stomachache," plus "some other medication." *(Tr. at 10)*.  When the Court

questioned whether his condition or medication in any way affected Petitioner's ability to understand

the proceedings, Petitioner stated he understood.  *(Tr. at 10)*.  Petitioner admitted the truth of the

factual basis for the plea, and pled guilty to the charges against him.  *(Tr. at 11)*.

The presentence investigation report indicates Petitioner has nine previous adult criminal

convictions, adding up to a total of eighteen criminal history points and resulting in a Criminal History

Category of VI. *(Doc. #7, Exhibit 3 pages 4-6, Government Response)*.  The Criminal History

Category of VI plus an Offense Level of nineteen yielded a guideline imprisonment range of 63 to 78

months. *(Doc. #7, Exhibit 3 pages 8-9)*.  The presentence investigation report also notes that had

Petitioner proceeded to trial and been convicted, the guideline calculations would have been "based

on an offense level of twenty-four (24) combined with a criminal history category of VI, resulting in

a guideline imprisonment range of 100 to 125 months." *(Doc. #7, Exhibit 3 page 9)*.

On November 12, 2002, Petitioner appeared with counsel, Steve Ryan, before District Judge

James A. Parker for sentencing.  Petitioner participated in the hearing with the aid of his counsel and

an English/Spanish interpreter.  The Court noted that it was accepting Petitioner's guilty plea based

on a handwritten letter from Petitioner dated August 8, 2002, information provided by Petitioner at

his plea hearing and the information contained in the presentence report. *(Sentencing Transcript of*

*November 12, 2002, page 3, hereinafter referred to as "Sent. Tr. at 3")*.  The Court recited the

results of the pre-sentence investigation and report and provided Petitioner with an opportunity to

object, but Petitioner, through counsel, agreed with the results[4]. *(Sent. Tr. at 3)*. The Court asked

Petitioner if there was anything he wanted to say and Petitioner used this opportunity to address the

Court to apologize, promise he would never return to the United States and ask for leniency. *(Sent*

*Tr. at 4)*. The Court sentenced Petitioner to imprisonment for 63 months and stated that Petitioner

must comply with the special condition of obeying all United States Immigration and Naturalization

Service Laws. *(Sent. Tr. at 5)*.

On January 22, 2003, Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence

pursuant to 28 U.S.C. § 2255. *(Doc. #1)*. Petitioner raises an ineffective assistance of counsel claim

based on trial counsel's failure to preserve Petitioner's right to seek a downward departure from the

applicable offense level and trial counsel's failure to challenge Petitioner's criminal history category

as determined by the probation office. The United States filed a response on March 17, 2003 arguing

that Petitioner entered into a plea agreement, the provisions of which preclude Petitioner from

challenging his prior removal, his criminal history category or his sentence. *(Doc. #7)*.

### II. Analysis

A recent Supreme Court case clarifies procedural questions surrounding ineffective assistance

of counsel claims. In *Massaro v. United States*, 123 S. Ct. 1690, 1691 (2003). the Court adopts the

position of the majority of circuits, including the Tenth Circuit decision in *Galloway*, holding that an

"ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255,

whether or not the petitioner could have raised the claim on direct appeal." *See United States v.*

---

[4]The Court stated that the presentence report set the total offense level at 21 and criminal history category at VI resulting in a guideline imprisonment range of 77 to 96 months. but accepted the plea agreement between Petitioner and the Government specifying an offense level of 19 which resulted in a lowering of the guideline imprisonment range of 63 to 78 months.

*Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). Therefore, although Petitioner did not file a direct appeal, he did not waive his right to file an ineffective assistance of counsel claim under § 2255 when he signed the plea agreement.

### Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Petitioner must make a two-prong showing: 1) that counsel's performance was constitutionally defective; and 2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord, Rogers v. United States*, 91 F. 3d 1388, 1391 (10th Cir. 1996). To prove deficient performance, Petitioner must overcome the presumption that counsel's conduct was constitutionally effective. *Duvall v. Reynolds*, 139 F.3d 768, 776-777 (10th Cir. 1998).

Any scrutiny of counsel's performance must be highly deferential and must avoid the distorting effects of hindsight. *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997).

To show ineffective assistance in the context of a guilty plea, the movant must establish that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty but instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As noted above, Petitioner stated at his plea hearing and represented by his signature on the plea agreement, that he discussed the agreement with his attorney, that he was satisfied with counsel's representation, that he understood the consequences of the plea, that his plea was freely and voluntarily made, and

7

that no one promised him anything other than what was set forth in the plea agreement. Petitioner also did not take advantage of the sentencing hearing on November 12, 2002 to inform the Court of any objections to or doubts about the plea agreement and its consequences. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1997). "A defendant's statements at a plea hearing should be regarded as conclusive as to truth and accuracy in the absence of a believable, valid reason to justify a departure from the apparent truth of those statements." *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988). Petitioner has not presented anything to this Court to demonstrate that his attorney materially misrepresented the terms or consequences of his plea, and the Court cannot say that he was prejudiced in any way by his attorney's representation with regard to plea negotiations. *See, Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir. 1989).

### Downward Departure for Voluntary Deportation

Petitioner was convicted of illegal reentry of a deported alien under 8 U.S.C. § 1326(a) and (b)(2). He had been deported on a prior occasion subsequent to a conviction for an aggravated felony (Willful Discharge of a Firearm in a Negligent Manner) as defined in 8 U.S.C. § 1101(a)(43). Petitioner freely entered into a plea agreement and, in exchange for his plea of guilty and voluntary waiver of deportation proceedings, the government recommended that Petitioner be sentenced at the low end of the guideline range or 63 months. The government made the recommendation as to sentence and the Court accepted the recommendation and sentenced Petitioner accordingly. Petitioner now contends that defense counsel, in negotiating the plea agreement, was incompetent for not preserving the right to ask the Court to go beyond that agreement and depart downward based on Petitioner's agreement to not contest the reinstatement of the prior deportation order. In

8

fact Petitioner, by his plea agreement, received the benefit of his voluntary departure in exchange for the government's recommendations.

The United States Sentencing Guidelines § 5K2.0 allows the court to depart downward from the sentencing guideline range, pursuant to 18 U.S.C. § 3553(b)(1), if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." In *Koon v. United States*, 116 S. Ct. 2035 (1996), the Supreme Court somewhat loosened the standards for application of this provision, but said "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the [applicable] Guideline." *(Id., at 2046)*. Therefore, it is not a proper consideration that a factor is in the heartland, "but whether the particular factor is within the heartland given all the facts of the case." *(Id., at 2047)*. What a district court must determine is whether the misconduct that occurred in the particular instance suffices to make the case "atypical." (Id.). In addition, the USSG § 5K2.0(a) policy statement recognizes that the issue of departure is to be resolved on a case-specific basis.

In this case, downward departure following consent to deportation is not forbidden by the guidelines. It is also not discouraged. Therefore, an analysis of whether downward departure is applicable in this case rests on whether the consent to deportation takes the matter outside of the "heartland" of cases considered under the guidelines. This requires a consideration as to whether the particular circumstances of the Petitioner are unusual enough to justify a downward departure.

It should be noted that 8 U.S.C. § 1326 prohibits reentry of a person legally deported on a prior occasion. Therefore, a person convicted for illegal reentry would have no reasonable basis to

9

avoid deportation. United States Sentencing Guideline 2L1.2(b)(1), which applies to the substantive offense in this case, refers to a defendant who "previously was deported." The commentary to the guidelines also refers to deportation.[5] So, merely consenting to deportation would not seem to be outside the "heartland" of the guidelines. "Rather, given its mandate, *see* 28 U.S.C. § 994, as well as its institutional expertise and experience, . . . it is quite clear that the Commission would have considered that an alien defendant, particularly one convicted of *unlawful reentry* subsequent to deportation for an aggravated felony, almost certainly would be deported again." *United States v. Clase-Espinal*, 115 F.3d 1054, 1057 (1st Cir. 1997), *cert. denied*, 118 S. Ct. 384 (1997) (italics in original and citation omitted); *see also* 8 U.S.C. § 1251(a)(1)(B) (alien who has entered without inspection). In addition, Petitioner's plea agreement with the government as to sentencing recommendations requires a conclusion that Petitioner's request (or that of his counsel) for downward departure, beyond that bargained for, would not provide an unusual or atypical situation for which he may benefit by a further departure. Petitioner's circumstances are not outside the heartland of the guidelines and, therefore, there is no basis for downward departure based on Petitioner's mere consent to deportation.

Furthermore, there is no indication that even if Petitioner's counsel had requested the departure, it would have been agreed to by the prosecutors or the district court. *See United States v. Clase-Espinal*, 115 F.3d 1054, 1056 (1st Cir. 1997), *cert. denied*, 118 S. Ct. 384 (1997)(despite a two-level downward departure recommendation from attorney general, stipulation of deportability does not justify downward departure because Sentencing Commission already considered

---

[5]Commentary 3 indicates a criminal history upward departure may be warranted with "prior instances of deportation." Petitioner admitted he was previously deported.

deportability of aliens); *Pimental v. United States*, 981 F. Supp. 697 (D. Mass. 1997) ("there is not the slightest evidence that the Government would have entered into such an agreement"); *United States v. Gomez-Sotelo*, 18 Fed.Appx. 690 (10th Cir. 2001), unpublished (in denying claim of ineffective assistance of counsel due to failure to move for downward departure based on stipulation to voluntary deportation, the Court noted that the authority to deport aliens rests with Congress and that federal courts should not interfere as long as due process requirements are met). Petitioner has failed to show his sentencing outcome would have been any different had his counsel requested the downward departure. Accordingly, Petitioner's claims must be dismissed.

**WHEREFORE, IT IS HEREBY RECOMMENDED THAT** Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 *(Doc. #1)* filed January 22, 2003 be **DENIED**, and that this action be dismissed with prejudice.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**

11